UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DENNIS D. JACKSON,

    Defendant.

Case No. 17-cr-40052-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Dennis D. Jackson's motion to suppress all evidence in the case, including evidence seized in a search pursuant to a March 15, 2017, warrant and the "fruit of the poisonous tree" to which that search led (Doc. 54). He claims the warrant and the process of obtaining it was defective in a number of ways—the complaint for the warrant did not contain sufficient facts to justify issuance of the warrant; the warrant was overbroad; the complaint for the warrant was not supported by an affidavit; the complaint states the defendant committed a crime on a future date; the complainant's statement is insufficient to justify seizing handguns; and the complainant's statement contains hearsay, innuendo and inaccuracies. He also claims the warrant is invalid because the complaint is based on information that is inadmissible because it was gathered in a manner that did not comply with state electronic eavesdropping procedural requirements. The Government has responded to the motion (Docs. 61 & 62), and Jackson has replied to that response (Doc. 72).

**I.    Background**

In early 2017, while investigating a February 2017 shooting in Harrisburg, Illinois, law enforcement officers, including Illinois State Police Inspector Glenn Rountree, came to believe Jackson was selling methamphetamine from his home at 514 West Poplar Street in Harrisburg.

To verify their suspicions about Jackson and methamphetamine, law enforcement conducted three controlled buys of methamphetamine from Jackson at his home using a confidential source ("CS"). The controlled buys were conducted on March 6, 10 and 14, and were recorded by audio and video recording with the consent of the CS. The recordings purport to record Jackson selling various quantities of methamphetamine to the CS.

The use of an audio and video recording device was orally authorized by the Saline County State's Attorney's Office pursuant to 720 ILCS 5/14-3(q)(1) (2015). That provision allows the State's Attorney, in certain circumstances, to verbally approve the use of eavesdropping devices to record a conversation involving a CS under the direction of law enforcement. The State's Attorney must make a written memorialization of the request to use a device, 720 ILCS 5/14-3(q)(2) (2015), and that written memorialization, along with written approval of the request, must be filed with the circuit clerk by the first business day after the approved recording period expires, 720 ILCS 5/14-3(q)(3)(D) (2015). Under Illinois law, compliance with the memorialization and filing requirement is a prerequisite for admissibility of any part of the recorded or overheard conversation. 720 ILCS 5/14-3(q)(5) (2015). In this case, the Saline County State's Attorney authorizing the use of an eavesdropping device did not memorialize in writing the request for authorization or his approval, and he did not file any relevant documentation with the Saline County Circuit Clerk.

On March 15, 2017, Rountree presented a complaint ("Complaint") for a search warrant of Jackson's residence to Saline County Circuit Court Judge Walden Morris (Doc. 61-4). The Complaint stated that the complainant, "on oath (or by affirmation) says that he/she has reasonable grounds to believe that on or about March 6, 2017 to March 16, 2017, in or about 514 West Poplar

Street in Harrisburg, Illinois," certain drug offenses occurred. It incorporated Exhibit A as support for the complainant's belief in probable cause to believe items used in committing a crime would be found there. The Complaint bore Rountree's signature, and Judge Morris's signature under the statement that the Complaint was signed and sworn to before him on March 15, 2017.

Exhibit A (Doc. 61-4) contained Rountree's descriptions of the three recorded controlled buys to establish probable cause to believe evidence of a crime would be found in Jackson's home. In support of his request for authorization for a no-knock entry, Rountree set forth his assessment of Jackson's criminal history, gang affiliation, security measures for his criminal organization, and other suspected criminal activity involving weapons. Exhibit A bore Rountree's signature and Judge Morris's signature under the statement that Exhibit A was signed and sworn to before him on March 15, 2017, at 2:36 p.m.

Judge Morris found that the Complaint along with Exhibit A established probable cause to believe evidence of certain enumerated drug-related crimes would be found in Jackson's home, so he issued the requested warrant on March 15, 2017, at 2:38 p.m. (Doc. 61-5). The warrant, signed by Judge Morris, further stated that Rountree "has subscribed and sworn to a complaint for a search warrant before me." The warrant authorized the search of Jackson's home for the following items:

> Methamphetamine, materials used to package methamphetamine, digital scales, paraphernalia used to injest [*sic*] methamphetamine, safes used to store methamphetamine, other narcotics including Heroin, U.S. Currency, electronic surveillance equipment, electronic media equipment, notebooks and papers which may contain records pertaining to illicit narcotics transactions, weapons and ammunition.
>
> All other contraband which has been used in the commission of or which constitutes evidence of the Offenses of: Possession and/or Delivery of Methamphetamine and/or Controlled Substance.

Rountree and other law enforcement officers executed the warrant the following day, March 16, 2017. In the search, they seized various items, including various drugs and four loaded semi-automatic pistols, and arrested Jackson on other arrest warrants for drug charges. Three of the pistols were in a zippered case on the floor of a closet under a water heater; the fourth was in a box of dog treats by an exterior door. Following his arrest, Jackson gave incriminating statements to law enforcement officers.

Jackson was initially charged in the Saline County Circuit Court with several drug crimes under Illinois law. He was later indicted by a federal grand jury on several drug charges based on the three alleged controlled buys and the drugs seized from his home in the March 16, 2017, search. A superseding indictment increased the quantity of drugs charged in one count, and a second superseding indictment added weapons charges based on the firearms seized from his home in the search. That is the case now before the Court. In the pending motion to suppress, Jackson seeks to suppress all of the evidence seized in the search and all of the evidence to which it led.

## II. Analysis

Jackson believes the search violated his Fourth Amendment rights. The Fourth Amendment to the Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

A defendant who seeks to suppress evidence because it was obtained in violation of the

Fourth Amendment bears the burden of making a *prima facie* showing of illegality. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). The Court need not schedule a hearing on the basis of a motion which fails to allege a *prima facie* showing of illegality and which relies, at best, on vague, conclusory allegations. *Id.* at 1212; *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). A defendant must present "definite, specific, detailed, and nonconjectural" facts that justify relief, and the facts must be material and in dispute before a district court will even grant a suppression hearing. *Randle*, 966 F.2d at 1212; *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004); *see United States v. Felix-Felix*, 275 F.3d 627, 633 (7th Cir. 2001) (defendant's "burden to establish the necessity of a hearing by demonstrating that there was a disputed material issue of fact justifying relief").

The Court finds it exceedingly difficult to decipher much of what Jackson attempts to argue in the vague statements in his motion, which fails to explain his positions in any detail and cites almost no relevant authority. Nevertheless, the Court has detected the outlines of some arguments and will address in turn. Other arguments not detected by the Court have been waived because they are "underdeveloped, conclusory, or unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

For the following reasons, the Court finds Jackson has not established a *prima facie* showing of illegality and is not entitled to a hearing or suppression of evidence

    A.    <u>Probable Cause</u>

In his motion, Jackson states generally that "the complaint for the warrant does not state facts which should have given rise to the issuance of a warrant." Def.'s Mot. Suppress 1. The

Court construes this to be challenging whether there was probable cause for the warrant to issue. There is probable cause for a search warrant where there is a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The *Gates* Court went on to say:

> [W]e reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. . . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 239-40 (citations omitted). A court should give great deference to the issuing judge's decision and should affirm a determination of probable cause unless the judge was clearly in error. *Gates*, 462 U.S. at 236; *United States v. Walker*, 237 F.3d 845, 849 (7th Cir. 2001). Accordingly, a court should resolve doubtful cases in favor of upholding the warrant. *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992).

Jackson points to no clear error by Judge Morris in this case. The totality of the circumstances clearly indicates that Rountree had evidence that Jackson had sold methamphetamine from his home at 514 West Poplar Street, Harrisburg, Illinois, on March 6, 10 and 14, 2017. Rountree, a law enforcement officer, had a good basis for knowing the information in the Complaint because he was part of the law enforcement group that arranged the controlled buys, he personally surveilled the buys while in progress, he was able to review the audio and video recordings of the buys, and he authored the reports of the buys. The CS used in the buys reported to law enforcement that Jackson retrieved drugs from a back room of the residence, that Jackson had scales he used to weigh heroin as well as methamphetamine, and that Jackson had

6

stated at each buy that he had additional methamphetamine to sell. Rountree could verify the CS's statements by reviewing the audio and video recordings of those buys.

The Court believes that on March 15, 2017, Judge Morris was right to conclude, based on Rountree's Complaint and its Exhibit A, that there was a fair probability that contraband in the form of methamphetamine, heroin and pills and their related tools of the trade (*i.e.*, packaging material, scales, paraphernalia, safes, currency, electronic surveillance equipment, electronic media equipment, business records and weapons/ammunition) would be at Jackson's home in the near future, including the following day, March 16, 2017. There was evidence Jackson had made several recent methamphetamine sales from his home and was planning on continuing that business, so drugs, the recently received buy money and other tools of the trade were likely to still be in Jackson's home. Considering the totality of the circumstances, there was probable cause to support issuance of the warrant.

B. Overbreadth/Particularity

Jackson states in his motion, "The warrant was overbroad and prohibited by the 4th Amendment to the Constitution of the United States." Def.'s Mot. Suppress 1. The argument that a warrant is overbroad stems from the Fourth Amendment's express requirement that the warrant "particularly describe[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The purpose of this requirement is to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

"[T]he scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *Id.* (quoting *United States v. Ross,* 456 U.S. 798, 824 (1982)). The object of the search must be described with reasonable specificity but need not be elaborately detailed. *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984). The warrant must "explicate the items to be seized only as precisely as the circumstances and the nature of the alleged crime permit." *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998) (internal citation omitted); *accord United States v. Wenzel*, 854 F.3d 957, 961 (7th Cir. 2017). The warrant can then authorize a search of the place where there is probable cause to believe the object of the search could reasonably be found, even if it means searching compartments or containers within that place. *Ross*, 456 U.S. at 820-21. In cases where the items to be seized include drugs, which can be very small in size, a warrant necessarily justifies searching anywhere in the place to be searched where drugs could plausibly be found, including very small compartments or containers. *Reed*, 726 F.2d at 342 ("A search for drugs justifies entry into containers where the drugs would fit and might reasonably be found."); *see also Wenzel*, 854 F.3d at 962 (warrant to search for thumb drives authorized search of outbuildings because object could plausibly be found there).

Jackson does not contend that the warrant was overbroad because it failed to particularly describe the place to be searched. It described the place as 514 West Poplar Street in Harrisburg, and there is no indication that this description covered more area than was reasonable to believe connected to the alleged drug activities described in the warrant or that it misidentified the location of those activities.

Nor does he contend that the warrant was overbroad because it failed to particularly

describe the things to be seized. On the contrary, the warrant is specific about the items to be seized, many of which can be very small—*i.e.,* methamphetamine, materials used to package methamphetamine, heroin—and all of which would relate to the offenses described in the warrant. Consequently, the warrant was not overbroad in its description of things to be seized and justified a search of any part of 514 West Poplar Street where such items would fit and might reasonably be found, including in a zippered case on closet floor or in a box of dog treats.

In sum, the search warrant issued in this case is not the kind of general search warrant prohibited by the Fourth Amendment. *See Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (failing to describe at all the items to be seized). To the extent Jackson believes the warrant is overbroad because it authorizes seizure of weapons and ammunition without any probable cause to believe he was involved in a weapons offense, the Court addresses that argument later in this order.

C. <u>Affidavit</u>

In his motion, Jackson states, "The Complaint for the Warrant is not supported by an affidavit, but merely by an 'exhibit a', which is not properly sworn." Def.'s Mot. Suppress 1. The requirement that a complaint for a warrant be supported by a sworn statement such as an affidavit stems from the Fourth Amendment's provision that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." U.S. Const. amend. IV. The United States Court of Appeals for the Second Circuit has explained the requirement:

> An "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed.

9

*United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977).

Jackson does not explain in his motion why he believes the Complaint and its Exhibit A are "not properly sworn." On their faces, both documents purport to have been made "on oath" and to have been "sworn to before" Judge Morris, and they are both signed by Rountree, the complainant, and Judge Morris. Thus, they both bear the signs that they are "formal assertion[s] of, or attestation[s] to, the truth of what has been, or is to be, said," and that the complainant was "impressed with the solemnity and importance of his words." *Id.* Thus, the truth-seeking purpose of the "Oath or affirmation" requirement of the Fourth Amendment was apparently served. Without any "definite, specific, detailed, and nonconjectural" facts, *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992), to establish the documents were not actually "supported by Oath or affirmation" as they purport to be on their faces, the Court can find no Fourth Amendment violation.

Furthermore, it is irrelevant that neither document is labeled as an "affidavit." "The Fourth Amendment does not require that probable cause be established by an affidavit." *United States v. Mendel*, 578 F.2d 668, 673 (7th Cir. 1978). It is enough that the statements be supported by "Oath or affirmation," *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994) (sworn, unrecorded oral statements); *Campbell v. Minnesota*, 553 F.2d 40, 42 (8th Cir. 1977) (sworn oral statements), as they were in this case.

D.   Future Crime

Jackson argues that the Complaint is deficient because it "contains a statement that the defendant committed a crime one day after the Complaint date." Def.'s Mot. Suppress 1. This assertion clearly refers to the statement in the March 15, 2017, Complaint that Rountree had reason

to believe that "on or about March 6, 2017 to *March 16*, 2017, . . . the following offenses *were committed*. . . ." Compl. for Search Warrant 1 (Doc. 61-4) (emphasis added). Of course, it was impossible that, as of March 15, 2017, Rountree had evidence that a crime *had been committed* the following day.

The Court finds it would have been entirely reasonable for Judge Morris to construe the Complaint and its Exhibit A, when viewed as a whole, in a common-sense way to be advancing the assertion that Rountree had reason to believe the listed crimes would continue to be committed—and that evidence of those crimes would continue to be in Jackson's home—on March 16, 2017. Exhibit A supports the contention that drug activity had been ongoing at Jackson's home—it had occurred multiple times since March 6, 2017—and would continue into the future—on March 14, 2017, Jackson had more drugs to sell. Judge Morris could have reasonably concluded that Rountree was presenting evidence that there would continue to be contraband in Jackson's home on March 16, 2017.

Even if Rountree had intentionally or recklessly made a false statement regarding one of the days he reasonably believed a crime had been committed in Jackson's home, that falsity was not material to the probable cause finding. Before the Court will invalidate a warrant based on a complainant's false statements, the defendant must show the false statements were material, that is, that they were necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If the remaining statements in the application are adequate to establish probable cause without the false statements, the false statements are not material and do not require invalidating the warrant. *See id.* at 156.

Rountree's statement regarding his belief that crimes "had been" committed on a future

date was not material to the probable cause determination. Even if he had not specified the date of March 16, 2017, there was sufficient information in Exhibit A to establish probable cause to believe that the cited crimes had been committed from March 6, 2017, to the date of the Complaint, that they would continue at least into the near future, and that evidence of a crime would be in Jackson's home until at least March 16, 2017. Any false statement by Rountree was not material to the finding of probable cause and will therefore not require invalidating the search warrant.

    E.    <u>Handguns</u>

Jackson contends the warrant is overbroad because the information in Exhibit A is insufficient to justify the search and seizure of handguns. Def.'s Mot. Suppress 1-2. None of the paragraphs in Exhibit A used to establish probable cause mentions handguns or other weapons.

Even if the warrant was overbroad because it authorized the search for and seizure of "weapons and ammunition"—and the Court is not holding it was—seizure of those items did not violate the Fourth Amendment because they were seized under the plain view doctrine. Under that doctrine, officers may conduct a warrantless seizure of evidence where three conditions are met: "First, the officer may not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the item must have been in plain view, and third, its incriminating character must also be immediately apparent." *United States v. Contreras*, 820 F.3d 255, 262 (7th Cir. 2016) (citing *Horton v. California,* 496 U.S. 128, 136 (1990)).

As noted earlier in this order, the warrant properly authorized law enforcement agents to search for drugs in Jackson's home, and because drugs can be hidden in very small compartments, they were justified in searching every nook and cranny of that home. This included a zippered case on a closet floor and the dog treat box in which the guns and ammunition were found. Once

they were legitimately looking for drugs in those locations, the weapons and ammunition were in plain view. Furthermore, the incriminating nature of those items was immediately apparent because of the well-recognized connection between drug dealing and firearms. *United States v. Gulley*, 722 F.3d 901, 908 (7th Cir. 2013) ("[I]t is widely known that guns and drugs go hand in hand."); *United States v. Perez,* 581 F.3d 539, 547 (7th Cir. 2009) (acknowledging that weapons are "recognized tools of the drug trade"); *United States v. Ramirez,* 45 F.3d 1096, 1103 (7th Cir. 1995) (same). Additionally, at the time of the search, the officers executing the search were aware that Jackson had at least one prior felony conviction, so his mere possession of a firearm was a crime under 18 U.S.C. § 922(g)(1). For these reasons, the seizure of the four firearms and ammunition did not violate the Fourth Amendment.

F.  <u>Hearsay, Innuendo and Inaccuracies</u>

Jackson complains that the Complaint and its Exhibit A did not adequately support the warrant because they contain hearsay, innuendo and inaccurate statements. He specifically points to statements made on the second page of Exhibit A that Rountree used to justify issuance of a "no-knock" warrant:

i. That the defendant was implicated in shootings without substantial facts or information;

ii. That the Defendant was a member of the gangster disciples without substantial facts or information;

iii. The claim of Dennis Jackson's "extensive criminal history" is inaccurate at best. An actual review of his history shows only 1 conviction and that was over ten years ago.

Def.'s Mot. Suppress 2.

As a preliminary matter, the Court notes that there is nothing wrong with using hearsay in

13

an application for a warrant so long as the hearsay statements are reliable. *United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007). Here, Jackson has not proffered any "definite, specific, detailed, and nonconjectural" facts, *see United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992), showing the statements in question were unreliable. The closest he comes to this is his assertion in paragraph iii. that he only has one prior conviction more than ten years ago. That statement is belied by National Crime Information Center information showing seven criminal convictions from 2005 to 2016, at least three of which were felonies (Doc. 61-10).

More importantly, the statements Jackson complains are either hearsay, innuendo or inaccuracies are immaterial to the probable cause determination. As noted with respect to the reference to March 16, 2017, if the rest of the information in the application supports probable cause, improper statements are immaterial and will not justify invalidating the warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The statements about which Jackson complains were not offered to support probable cause for the search; the evidence of the three controlled buys were alone sufficient for that purpose. On the contrary, the statements to which Jackson objects were offered for the purpose of obtaining permission for law enforcement officers to conduct the search without knocking on Jackson's door and announcing themselves before the search. Even if these statements had been false or unreliable—and the Court is not saying they were—they were simply not material to the probable cause determination. Accordingly, those statements do not justify suppressing evidence.

G.  Overhears

Jackson argues that the evidence obtained in the eavesdropping itself is inadmissible because the process of gathering it did not comply with Illinois law and/or that the warrant was

invalid because probable cause was established using information obtained with the eavesdropping that did not comply with Illinois law. Def.'s Mot. Suppress 2-3. Specifically, Illinois law required a State's Attorney who approves the use of recording devices to make a written memorialization of the request and approval to use the recording devices and then to file the written documents with the circuit clerk. 720 ILCS 5/14-3(q)(2) & (3)(D) (2015). Compliance with the memorialization and filing requirement is a prerequisite for admissibility in state court of any part of the recorded or overheard conversation. 720 ILCS 5/14-3(q)(5) (2015). The Government admits that Illinois procedure was not followed with respect to recordings of the three alleged controlled buys used to establish probable cause for the warrant in this case, but argues that Illinois law cannot render evidence inadmissible in federal court so long as the gathering of the evidence complies with the federal law.

The Government is correct that admissibility of evidence in a federal proceeding is governed by federal, not state, law. *United States v. Mealy*, 851 F.2d 890, 907 (7th Cir. 1988). Thus, compliance with state law is irrelevant in a federal proceeding. *Id.*

Jackson has not suggested how the failure to file a written memorialization of the State's Attorney's authorization to use recording devices violated any federal right such that the recordings could not be used to obtain the search warrant of Jackson's home on March 15, 2017. Nor has he argued that the recordings were obtained in a manner that violates the U.S. Constitution. In fact, he admits in his reply brief that "there is no question that the recordings do not violate federal law." Def.'s Reply 3. Indeed, recording a conversation with the consent of one of the participants does not violate the Fourth Amendment or federal statutes, even if the recording is in a private home. [1] *See United States v. Eschweiler*, 745 F.2d 435, 437 (7th Cir.

---

[1] In its brief, the Government articulates an argument based on *Kyllo v. United States*, 533 U.S. 27

1984) ("Both the Fourth Amendment, by judicial interpretation, and Title III, expressly, allow an undercover agent to record his conversations with a suspect and allow the government to introduce the recording in evidence."); *see also* 18 U.S.C. § 2511(2)(c) (2017) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.").

For example, in *United States v. D'Antoni*, 874 F.2d 1214, 1218-19 (7th Cir. 1989), the Court of Appeals found electronic monitoring by a government-directed CS did not violate the Fourth Amendment so long as one party to the conversation consented to the recording, even though the recording would be inadmissible under state law because it was not obtained pursuant to a court order. Finding the recordings admissible, the Court of Appeals rejected the defendants' arguments that federal courts should show comity to state courts by following state rules regarding admissibility of evidence gathered in violation of state law and that to do otherwise would encourage state authorities to violate state law. *Id.* at 1218. As one district court has noted, to afford state admissibility decisions comity would give state governments too much power over federal criminal prosecutions, raising constitutional questions under the Supremacy Clause. *United States v. Gervasi*, 562 F. Supp. 632, 649-50 (N.D. Ill. 1983).

Jackson points in his reply to other cases that do not resemble this case in the least because they involve decisions *by state courts* whether to admit evidence that was gathered in violation of state law. *See, e.g., People v. Fidler*, 391 N.E.2d 210, 211 (Ill. App. Ct. 1979) (state court admitted evidence that did not comply with state law because solely federal officers gathered it in

---

(2001), regarding whether Jackson had a reasonable expectation of privacy in his interactions with the CS. However, Jackson did not articulate any argument regarding this issue, so the Court need not address it in this order.

compliance with federal law); *People v. Manna*, 421 N.E.2d 542, 549 (Ill. App. Ct. 1981) (same, but where state law enforcement officers provided protection for federal officers recording conversations but not colluding with federal officers to evade state law); *People v. Winchell*, 488 N.E.2d 620, 622 (Ill. App. Ct. 1986) (state court admitted evidence from joint eavesdropping by state and federal officials where no evidence of collusion to evade state law). Those cases do not, however, address federal court admissibility decisions and therefore provide no guidance to this Court. Jackson has pointed to no case holding a federal court should suppress evidence obtained in compliance with federal law, the situation before the Court in this case.

Additionally, for the first time in his reply brief, Jackson suggests allowing state officials to disregard state law without consequence to federal prosecution "shocks the conscience" and therefore violates substantive due process guarantees. He points to at least one other instance where a State's Attorney has disregarded state law evidence collection rules and suggests there is collusion between state and federal officials to circumvent the more stringent state law.

Substantive due process claims aim to protect the individual against arbitrary government action by "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The substantive due process guarantee was intended not simply to protect from harm by government officials but to protect from government officials' abusing power or using it as an instrument of oppression. *See Lewis*, 523 U.S. at 848-49. Therefore, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Lewis*, 523 U.S. at 846 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 129 (1992)). The level of abuse cognizable in a substantive due process claim is government

17

conduct that "shocks the conscience." *Lewis*, 523 U.S. at 846; *see Rochin v. California*, 342 U.S. 165, 172-73 (1952) (forcing an emetic down a suspect's throat to extract evidence from the suspect's stomach shocks the conscience). Whether conduct shocks the conscience is to be determined by examining the totality of the circumstances. *Lewis*, 523 U.S. at 850. The Supreme Court has described the real question as whether the conduct is "too close to the rack and the screw." *Rochin*, 342 U.S. at 172. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

As a preliminary matter, the Court would be justified in rejecting this argument simply because it was raised for the first time in a reply brief. It has long been established that arguments in support of a motion that are raised for the first time in a reply brief are waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998).

Even if the Court were to consider whether admitting evidence obtained in violation of state law violated substantive due process, it would reject that argument. First, substantive due process should not be relied on where there is an allegation of a specific violation of some other constitutional right. *See Lewis*, 523 U.S. at 842; *Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018). Here, Jackson claims Fourth Amendment violations, so the Court confines itself to Fourth Amendment analysis. Second, even had the Court considered Jackson's complaint through the Fifth Amendment due process lens, it would find nothing conscious-shocking about applying two different evidentiary standards in two different judicial systems. This is especially true where

other remedies exist to deter state officers from violating state law regarding gathering evidence: "state tort law, state criminal law, internal police discipline, and suits under 42 U.S.C. § 1983." *Collins v. Virginia*, No. 16-1027, 2018 WL 2402551, at *13 n.6 (U.S. May 29, 2018) (citing *Hudson v. Michigan,* 547 U.S. 586, 597-99 (2006)).

      H.      <u>Good Faith Exception</u>

Finally, the Government argues that the evidence should not be suppressed because Rountree and his colleagues executed the warrant in good faith. Jackson has not responded to this argument.

Even if a warrant is faulty, evidence seized pursuant to that warrant may still be admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). This is because the exclusionary rule is a prudential doctrine, not required by the constitution, which has as its sole purpose the deterrence of future constitutional violations by law enforcement officers. *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing *Leon*, 468 U.S. at 909). Whether to apply the exclusionary rule requires a balancing of the deterrent benefit and the cost of excluding reliable evidence. *Leon*, 468 U.S. at 913. If law enforcement officers act reasonably and in good faith, there is no deterrent benefit to applying the exclusionary rule because the officers already acted properly. *Id.* at 919-21. Thus, under the good faith exception, when an officer reasonably relies on a search warrant that is later declared invalid, the search is presumptively valid unless the defendant can show that the judge issuing the warrant wholly abandoned his judicial role as neutral arbitrator, the officers were dishonest or reckless in preparing the affidavit in support of the warrant, or that the warrant was so lacking in probable cause that reliance on it would be unreasonable. *Id.* at 923.

Jackson has not pointed to any evidence or made any argument that Judge Morris abandoned his role as a neutral arbitrator. To the extent he suggests Rountree was dishonest or reckless in preparing the complaint for the search warrant or that the warrant was deficient for the reasons discussed earlier in this order, the Court has rejected those arguments and does not find that the warrant was so lacking in probable cause that law enforcement officers could not reasonably rely on it. Even had the warrant been faulty, in the absence of any suggestion of bad faith, the Government is entitled to rely on the good faith exception to the exclusionary rule.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Jackson's motion to suppress (Doc. 54). The Court further finds that the period that the defendant's motion to suppress was pending, March 28, 2018, up to and including June 6, 2018, a reasonable period after the Court took the motion under advisement, *see Henderson v. United States*, 476 U.S. 321, 329 (1986), is **EXCLUDABLE** under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D).

**IT IS SO ORDERED.**
**DATED: June 11, 2018**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**